Filed 6/2/15  P. v. Donley CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SHAWN ARLIN DONLEY,<br><br>    Defendant and Appellant. | F067912<br><br>(Super. Ct. No. SCR013509)<br><br>**OPINION** |

## THE COURT\*

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Levy, Acting P.J., Cornell, J. and Poochigian, J.

A jury convicted appellant Shawn Arlin Donley of assault with a deadly weapon (count 1/§ 245, subd. (a)(1))[1] and two counts of felony vandalism (counts 2 & 3/§ 594, subd. (b)(1)). In a separate proceeding, the court found true four prior prison term enhancements (§ 667.5, subd. (b)). On appeal, Donley contends his sentence violates: (1) section 654's prohibition against multiple punishment; and (2) the constitutional prohibition against double jeopardy. We will find merit to Donley's first contention and modify his sentence accordingly. In all other respects, we affirm.

# FACTS

*The Trial*

Donley was Angela Floyd's ex-fiancé and was involved in a relationship with her for almost three years. By January 2013, the relationship had ended and Floyd was living alone in Ahwahnee, in a studio apartment that was attached to the garage of a house belonging to Marius Crisan, a retired police sergeant.

On January 17, 2013, Donley made several calls to Floyd during which he told her he wanted to take Floyd a file cabinet that belonged to her. Floyd told him not to come over, that she did not want to be with him anymore, and that he was not welcome on the property. Nevertheless, at around noon that day, Donley drove his truck to see Floyd. Crisan overheard Donley arguing with Floyd in her room and told him to leave, which he eventually did.

At approximately 1:00 p.m., Donley returned to Floyd's residence with her file cabinet in the back of his truck and pushed the cabinet off the truck. As Donley yelled at Floyd through a closed door, Crisan again confronted Donley and told him to leave. Donley replied, "Are you going to make me go, old man?" Crisan replied, "Well, if I have to, I will." Donley got angrier and started walking toward Crisan, which prompted Crisan to pull out a gun and point it at Donley. After a few more comments were

---

[1] All further statutory references are to the Penal Code.

exchanged, Donley got in his truck. Instead of leaving, however, Donley drove his truck in reverse over the file cabinet and got stuck. When he managed to get free, he drove about 400 feet to the end of the driveway and stayed there for approximately 20 minutes yelling at Floyd.

After dark, while Roger Clark was visiting Floyd, Donley called again asking her to let him come over. Within seconds after Floyd told Donley that Clark was there, Donley appeared in his truck in Crisan's driveway with his bright lights on. Floyd went outside her studio with Clark, saw Donley ram Clark's truck with his truck, and ran back to her studio. As she stood in the doorway, Floyd heard Donley say he was going to kill her. He then drove his truck full throttle at the studio, put on his brakes, and slid 20 feet into the doorway where Floyd had been standing, breaking the frame. Floyd managed to avoid being hit by doing a "back flip" over her bed. Meanwhile, Donley put the truck in reverse, hit Clark's truck again, and drove off.

Donley was arrested later that night at his mother house.

*Sentencing*

The assault that Donley was convicted of in count 1, was based on Donley's conduct on January 17, 2013, in driving his truck at Floyd as she stood in the doorway of her studio apartment. The vandalism charge in count 2, was based on the damage Donley caused to Clark's truck when Donley struck it with his truck. The vandalism charged in count 3, was based on the damage Donley caused to Floyd's studio apartment when his truck struck the doorway after Floyd got out of the way.

On August 9, 2013, at Donley's sentencing hearing, defense counsel argued that section 654 prohibited the court from imposing sentence on counts 2 and 3 because everything occurred quickly and the assault was "interwoven with the other two counts." The court, however, noted that the three counts involved separate victims and imposed an aggregate prison term of nine years four months: the aggravated term of four years on count 1; a consecutive eight-month term on count 2; a consecutive eight-month term on

3

count 3 (one third the middle term of two years); and four one-year prior prison term enhancements.

## DISCUSSION

### *The 654 Issue*

Donley contends section 654 prohibited the court from imposing punishment on count 3 because the assault of Floyd and the damage to the studio owned by Crisan occurred during an indivisible transaction with a single intent and objective of assaulting Floyd. Respondent contends that the court did not err in imposing sentence on count 3 because the assault and destruction of Crisan's property were separate acts, Donley had multiple objectives, and the counts involved different victims. We agree with Donley.

> "Under section 654, subdivision (a), '[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' [Citation.] '[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] ... [Citation.] If all the offenses were *incident to one objective,* the defendant may be punished for any *one* of such offenses but not for more than one.' [Citation.] 'If [a] defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of conduct."' [Citation.] The application of section 654, thus, 'turns on the *defendant's* objective in violating' multiple statutory provisions. [Citation.] Where the commission of one offense is merely '"a means toward the objective of the commission of the other,"' section 654 prohibits separate punishments for the two offenses. [Citation.]
>
> "Where 'section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited.' [Citation.] We apply a substantial evidence standard of review when determining whether section 654 applies. 'The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by

4

the evidence presented at trial.'" (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1288-1289 (*Kurtenbach*).)

In *Kurtenbach*, the defendant solicited his employee to burn the defendant's rental house so that the defendant could collect the insurance proceeds. The employee used gasoline to burn the house and was killed in the fire. The fire also caused $100,000 in damage to a neighboring house. (*Kurtenbach, supra,* 204 Cal.App.4th at pp. 1271-1272.)

A jury deadlocked on a murder charge but convicted the defendant of conspiracy to commit arson (§ 182, subd. (a)(1)), arson causing great bodily injury (§ 451, subd. (a)), concealing or knowingly failing to disclose an event affecting an insurance benefit (§ 550, subd. (b)(3)) and vandalism of the neighboring house (§594, subds. (a), (b)(1)). (*Kurtenbach, supra,* 204 Cal.App.4th at p. 1270.) The court imposed a prison sentence of 15 years eight months that included a terms for the defendant's arson and vandalism convictions. (*Ibid.*)

In finding that section 654 prohibited punishment for both the arson and vandalism convictions, the *Kurtenbach* court rejected the People's contention that punishment for both offenses was properly imposed because the crimes had two different victims:

> "[T]he multiple-victim exception to section 654 only applies to crimes of violence against persons, not crimes against property. [Citation.] 'Section 654 is not … "applicable where ... one act has two results each of which is an act of violence *against the person* of a separate individual."' [Citations.] As our Supreme Court has explained, '[a] defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' [Citation.] Further, the multiple-victim exception to section 654 only applies when *both* of the crimes at issue are crimes of violence against a person. [Citation.]
>
> "We must look to the statutory definition of the crimes at issue, including any allegations in enhancement, to determine whether those crimes were crimes of violence against a person within the meaning of the multiple-victim exception to section 654. [Citation.] The crime of arson causing great bodily injury is indisputably a crime of violence against a person, as it includes the element of great bodily injury. [Citation.] However, vandalism is *not* a crime of violence against a person. The

5

vandalism statute under which Kurtenbach was convicted criminalizes the act of causing damage or destruction 'with respect to any real or personal property not his or her own.' (§ 594, subd. (a).) It does not require injury to a person, and instead describes a crime against property. Accordingly, the multiple-victim exception to section 654 does not apply because vandalism is not a crime of violence against a person." (*Kurtenbach, supra,* 204 Cal.App.4th at pp. 1290-1291.)

Here, Donley's assault conviction and the vandalism conviction involving the studio apartment owned by Crisan were based on Donley's conduct in driving his truck into the doorway of the studio. Further, since vandalism is not a crime of violence against a person, section 654 prohibited the court from imposing sentence on that count even though the victim of the vandalism was Crisan and the victim of the assault was Floyd.

Respondent contends that section 654 did not bar punishment for Donley's vandalism conviction because the assault and the vandalism conviction were based on different acts and Donley had separate objectives in committing each offense. According to respondent, the assault was complete when Donley gunned his truck, spun by Clark's truck and headed towards Floyd and the vandalism occurred when Donley slammed on his brakes and slid into the apartment. Respondent further contends that each of these acts had separate objectives: the objective of the assault was to make Floyd fearful so that she would return to him, whereas the objective of the vandalism was retribution against Crisan for his conduct earlier that day. We disagree.

Donley's conduct in revving the motor on his truck and driving into the studio's doorway took only seconds and is not divisible as respondent suggests. Further, during closing argument, the prosecutor argued that the assault occurred when "the truck was floored. The truck was gassed. The truck was full throttle. The truck spun up a bunch of gravel. *The truck slammed into the door through which Angela Floyd ran.*"

Moreover, "'[t]he defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding

6

the defendant formed a separate intent and objective for each offense for which he was sentenced.'" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)  Donley may have had a motive to vandalize Crisan's property because Crisan ran him off his property earlier that day.  However, respondent does not cite any evidence that supports an inference that Donley's objective in slamming into the studio was to get even with Crisan and his abrupt application of the brakes suggests he tried to avoid hitting it.  Accordingly, we conclude that the court violated section 654 when it imposed a consecutive eight-month term on Donley's vandalism conviction and we will stay this term.

***The Double Jeopardy Claim***

Donley contends that by imposing sentences on his assault and vandalism convictions, the court violated the double jeopardy clauses of the state and federal constitutions.  This contention is moot in light of our decision to stay the term imposed on Donley's vandalism conviction.

## DISPOSITION

The eight-month term the court imposed on Donley's vandalism conviction is stayed and his sentence is reduced from 15 years four months to 14 years eight months. The trial court is directed to issue an amended abstract of judgment that incorporates this modification and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

7